Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| WILLIAM BALLARD, | ) Case No. |
| Plaintiff, | ) |
| vs. | ) **COMPLAINT FOR VIOLATIONS OF** |
|  | ) **THE FEDERAL SECURITIES LAWS** |
| EIDOS THERAPEUTICS, INC., NEIL | ) JURY TRIAL DEMANDED |
| KUMAR, SUZANNE SAWOCHKA | ) |
| HOOPER, WILLIAM LIS, ALI SATVAT, | ) |
| DOUGLAS ROHLEN, and UMA SINHA, | ) |
| Defendants. | ) |

Plaintiff William Ballard ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**NATURE OF THE ACTION**

1.      Plaintiff brings this action against Eidos Therapeutics, Inc. ("Eidos" or the "Company") and the members of Eidos's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to be acquired by BridgeBio Pharma, Inc. ("BridgeBio") through its wholly owned subsidiaries Globe Merger Sub I, Inc. and Globe Merger Sub II, Inc. (the "Proposed Transaction").

2.      On October 5, 2020, Eidos announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, each holder of Eidos common stock will have the right to receive, at their election, either (i) 1.85 shares of BridgeBio common stock, or (ii) $73.26 in cash, subject to proration such that the aggregate amount of cash is no greater than $175 for each Eidos share that they own.

3.      On December 16, 2020, Eidos filed a Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC.  The Proxy is materially deficient and misleading because, *inter alia,* it fails to disclose material information regarding: (i) Eidos and BridgeBio management's financial projections; (ii) the financial analyses that support the fairness opinion provided by the special committee of the Board's ("Special Committee") financial advisor, Centerview Partners LLC ("Centerview"); (iii) Centerview's potential conflicts of interest; and (iv) the background of the Proposed Transaction.  Without additional information, the Proxy is materially misleading in violation of the federal securities laws.

4.      The stockholder vote to approve the Proposed Transaction is forthcoming.  Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Eidos.

9.      Defendant Eidos is a Delaware corporation, with its principal executive offices located at 101 Montgomery Street, Suite 2000, San Francisco, California 94104.  Eidos's common stock trades on the NASDAQ Global Select Market under the ticker symbol "EIDX."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

10.    Defendant Neil Kumar ("Kumar") has served as Chief Executive Officer ("CEO") and a director of the Company since March 2016.  Defendant Kumar is also a co-founder of BridgeBio and has served as CEO and a director of BridgeBio since April 2015.

11.    Defendant Suzanne Sawochka Hooper has served as a director of the Company since August 2020.

12.    Defendant William Lis has served as a director of the Company since December 2018.

13.    Defendant Ali Satvat ("Satvat") has served as a director of the Company since June 2018.  Defendant Satvat has also served as a director of BridgeBio since March 2016.

14.    Defendant Douglas Rohlen has served as a director of the Company since August 2020.

15.    Defendant Uma Sinha ("Sinha") has served as a director of the Company since December 2019.  Defendant Sinha has also served as the Company's Chief Scientific Officer ("CSO") since June 2016.  Defendant Sinha also serves as the CSO at BridgeBio and CSO of other BridgeBio subsidiaries.

16.    Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

17.    Relevant non-party BridgeBio is a Delaware corporation, with its principal executive offices located at 421 Kipling Street, Palo Alto, California 94301.  BridgeBio's common stock trades on the NASDAQ Global Select Market under the ticker symbol "BBIO."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company and the Proposed Transaction**

18.    Eidos is a clinical stage biopharmaceutical company focused on addressing the large and growing unmet need in diseases caused by transthyretin ("TTR") amyloidosis ("ATTR").  The

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Company seeks to treat this family of diseases by targeting them at their collective source by stabilizing TTR.

19.    Eidos's product candidate, acoramidis ("AG10"), is an orally-administered small molecule designed to potently stabilize tetrameric TTR, thereby halting at its outset the series of molecular events that give rise to ATTR.  The Company's approach to the treatment of ATTR is designed to mimic a naturally-occurring variant of the TTR gene ("T119M") that is considered a "rescue mutation" because it has been shown to prevent ATTR in individuals carrying pathogenic, or disease-causing, mutations in the TTR gene.  Eidos believes this specific binding mode underlies the positive results of the Company's Phase 1 and Phase 2 clinical trials of AG10.

20.    On October 29, 2020, Eidos announced its third quarter 2020 financial results and business update.  Defendant Kumar commented that the Company had completed enrollment of its Phase 3 ATTRibute-CM clinical study of AG10 for patients with ATTR, stating:

> The completion of enrollment in our Phase 3 ATTRibute-CM clinical study marks the next milestone in the accelerated development of acoramidis for patients with transthyretin (TTR) amyloidosis (ATTR). Since originally licensing acoramidis from Stanford University in 2016, we have endeavored to advance the molecule as quickly as possible, knowing that every moment matters for the patients and families suffering from this devastating disease. We look forward to our top-line Phase 3 readout in just over a year and are preparing to commercialize acoramidis globally if the trial is successful.

21.    On October 5, 2020, Eidos issued a press release announcing the Proposed Transaction, which states, in relevant part:

> MOUNTAIN PALO ALTO, Calif. and SAN FRANCISCO, Oct. 05, 2020 -- BridgeBio Pharma, Inc. (Nasdaq: BBIO), a company focused on genetic diseases, and Eidos Therapeutics, Inc. (Nasdaq: EIDX), a company focused on transthyretin (TTR) amyloidosis (ATTR), today announced they have entered into a definitive agreement under which BridgeBio has agreed to acquire all of the outstanding common stock of Eidos it does not already own, representing approximately 36.3% of Eidos' outstanding shares. Eidos stockholders will have the right to receive in the transaction, at their election, either 1.85 shares of BridgeBio common stock or $73.26 in cash per Eidos share in the transaction, up to an aggregate maximum of $175 million of cash. The agreement was unanimously approved by BridgeBio's Board of Directors and was

- 5 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

approved by Eidos' Board of Directors based upon the unanimous recommendation of a special committee of independent directors of Eidos.

With this transaction, BridgeBio fully and formally welcomes Eidos back into its vibrant ecosystem of innovation. Eidos is developing acoramidis, a potential best-in-class TTR stabilizer, for patients with ATTR cardiomyopathy and polyneuropathy.

"With the completion of screening in the Phase 3 ATTRibute-CM study of acoramidis and expected enrollment of more than 600 participants, now is the time to begin laying the groundwork for a global launch.  This transaction removes the operational complexity of the current ownership structure and allows us to fully unlock the potential of this investigational medicine for patients and investors," said Neil Kumar, Ph.D., founder and CEO of BridgeBio and CEO of Eidos.  "Bringing Eidos fully back to BridgeBio positions us to invest in all opportunities around acoramidis, including subsequent studies to potentially broaden the evidence for its usage, and accelerate its commercial development using BridgeBio's established infrastructure.  We are excited to welcome acoramidis back into an ecosystem where cutting-edge science is being done across inherited diseases and targeted oncology."

BridgeBio applies its discover, create, test and deliver platform to target well described genetic diseases at their source.  Using this platform Eidos will be able to capitalize on BridgeBio's global clinical development and regulatory expertise, its developing commercial infrastructure, and its broader capital base to reach more patients more effectively.  BridgeBio will be able to invest in novel formulations and studies of acoramidis to maximize its long-term potential benefit to ATTR patients, as well as developing its commercial infrastructure.

Eidos and acoramidis will also become the keystone in BridgeBio's growing cardiorenal portfolio, which includes drug development in autosomal dominant hypocalcemia type 1 (ADH1) and primary hyperoxaluria type 1 (PH1) as well as undisclosed precision cardiology drug discovery programs.

Eidos completed screening in September for its pivotal Phase 3 ATTRibute-CM clinical trial of acoramidis in patients with ATTR cardiomyopathy.  The study is expected to enroll more than 600 subjects with either wild-type or variant TTR across more than 80 sites in 18 countries.  Topline results from Part A are expected in late 2021 or early 2022 and from Part B in 2023.  If Part A is successful, the company intends to file for regulatory approval of acoramidis in 2022.

BridgeBio expects to launch two drugs, if approved, in 2021 and is building the capabilities necessary to deliver genetic medicines to patients around the globe, which it can deploy for acoramidis.

"ATTR is a rapidly progressive and fatal disease when left untreated, so we know that every moment counts for the patients and families we aim to serve.  With Eidos fully reunited with BridgeBio, we intend to move as quickly as possible to advance acoramidis through the development process and, if approved, into the marketplace,"

- 6 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

said Cameron Turtle, D.Phil., senior vice president of cardiorenal disease at BridgeBio.

"The special committee of Eidos' Board believes that this transaction is in the best interest of the Eidos minority stockholders and offers them compelling value," said William Lis, chairman of the special committee of Eidos' Board. "The transaction recognizes the significant current value of acoramidis and allows the Eidos minority stockholders to participate in the potential future value of both acoramidis and the broader BridgeBio pipeline of over 20 novel medicines in development for genetic diseases."

BridgeBio anticipates several meaningful upcoming milestones across its portfolio over the next 12-18 months, including topline Phase 3 Part A data from acoramidis in ATTR cardiomyopathy, Phase 2 data from low-dose infigratinib (FGFR inhibitor) in achondroplasia, Phase 1/2 data from AAV5 gene therapy in congenital adrenal hyperplasia, and Phase 2 data from encaleret (calcium sensing receptor antagonist) in autosomal dominant hypocalcemia type 1.

**Additional Transactional Details**

Under the terms of the agreement, Eidos stockholders will be entitled to elect to receive the consideration for each share of Eidos common stock in all-stock or all-cash, subject to proration such that the cash portion of the transaction will not exceed $175 million in the aggregate.

- All-stock consideration: 1.85 shares of BridgeBio common stock per Eidos share; or

- All-cash consideration: $73.26 in cash per Eidos share, subject to proration.

The merger consideration represents a 55% premium to the volume weighted average price of Eidos shares over the 30 trading days ending on October 2, 2020 and a 41% premium to the closing trading price of Eidos common shares on October 2, 2020, based on the closing trading price of BridgeBio shares on October 2, 2020.

Eidos stockholders who do not make an election will be deemed to have elected the all-stock consideration. The transaction is intended to be treated as a reorganization for U.S. federal income tax purposes, in which case gain would be recognized by the Eidos stockholders only to the extent of any cash consideration received. At closing, Eidos stockholders will own between 16% and 18% of BridgeBio, depending on the amount of cash Eidos stockholders elect to receive.

The transaction is not subject to a financing contingency. BridgeBio intends to fund the cash consideration with available cash on hand.

The transaction, which is expected to close in the first quarter of 2021, is subject to the approval of a majority of Eidos' shares held by stockholders other than BridgeBio

- 7 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

and its affiliates.  In addition, in accordance with Section 203 of the Delaware General Corporation Law, the transaction is also subject to the approval of at least 66-2/3% of Eidos' outstanding voting shares not currently owned by BridgeBio or its affiliates or associates (as such terms are defined in Section 203 of the Delaware General Corporation Law), as well as other customary closing conditions.  The issuance of shares by BridgeBio will also need to be approved by the affirmative vote of a majority of the votes cast by BridgeBio's stockholders voting on such matter.  Directors of BridgeBio and their affiliates, collectively owning approximately 36% of the outstanding BridgeBio shares, have agreed to enter into voting and support agreements and have agreed to vote in favor of the share issuance.  There is no filing requirement under the Hart-Scott-Rodino Antitrust Improvements Act for this transaction.

Upon closing, Eidos will become a wholly owned subsidiary of BridgeBio and Eidos' common stock will cease trading independently on The Nasdaq Global Select Market.

## The Proxy Misleads Eidos Stockholders by Omitting Material Information

22.     On December 15, 2020 defendants filed the materially misleading and incomplete Proxy with the SEC.  Designed to convince Eidos's stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning: (i) Eidos and BridgeBio management's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Special Committee's financial advisor, Centerview; (iii) Centerview's potential conflicts of interest; and (iv) the background of the Proposed Transaction.

### *Material Omissions Concerning the Financial Projections*

23.     The Proxy is materially deficient because it fails to disclose material information regarding Eidos and BridgeBio management's financial projections.

24.     The Proxy sets forth that:

On September 6, 2019, the 2019 special committee held a telephonic meeting to review the Eidos financial projections provided by management of Eidos and the BridgeBio financial projections provided by management of BridgeBio and the key assumptions underlying such projections, with representatives of Centerview, Cravath and Navigant participating. Representatives of Cravath reviewed the directors' fiduciary duties and other legal matters in connection with the 2019 special committee's consideration of the August 2019 proposal and other alternatives. Representatives of Centerview and Navigant then reviewed the management projections and key underlying assumptions for each of Eidos and BridgeBio. After discussion, the 2019 special committee noted that it would be appropriate to make adjustments to the management projections, including adjustments based on the 2019

- 8 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

special committee's assessment of the probability of success and underlying product assumptions of each product candidate. Representatives of Navigant discussed their assessment of the key assumptions underlying the management projections and potential revisions to such projections based on Navigant's research. After discussion regarding these assumptions and potential adjustments, the 2019 special committee requested that Centerview present adjusted projections reflecting the adjustments that had been discussed for the 2019 special committee's review at the next committee meeting.

Proxy at 65.  However, the Proxy fails to disclose: (i) BridgeBio management's financial projections for BridgeBio provided to the 2019 special committee of the Board in August 2019 (the "2019 BridgeBio Projections") and Eidos management's financial projections for Eidos provided to the 2019 special committee in August 2019 (the "2019 Eidos Projections"); and (ii) the adjustments based on the 2019 special committee's assessment of the probability of success and other assumptions underlying each product candidate, made to the 2019 BridgeBio Projections and the 2019 Eidos Projections.

25.     The Proxy further states that:

Later on September 10, 2020, BridgeBio made available to the Eidos special committee and its advisors via an electronic data room BridgeBio management's projections for BridgeBio (excluding Eidos) that had been updated to reflect recent developments and management's current assumptions, which projections are referred to as the "BridgeBio management projections" (see the section entitled "—*Certain Unaudited Prospective Financial Information*").

* * *

On September 24, 2020, the Eidos special committee held a videoconference meeting, with representatives of Centerview, Cravath and Guidehouse participating. Representatives of Guidehouse reviewed the assumptions underlying the BridgeBio management projections and assumptions regarding Eidos that had been discussed with Eidos management during due diligence calls, as well as Guidehouse's recommended adjustments to such assumptions. The Eidos special committee discussed the assumptions made by management of BridgeBio and Eidos as well as Guidehouse's recommended adjustments, and directed Centerview to make additional adjustments to the BridgeBio management projections.

On September 25, 2020, the Eidos special committee held a videoconference meeting, with representatives of Centerview and Cravath participating. Representatives of Centerview reviewed the BridgeBio management projections, including the impact of adjustments discussed at the meeting of the Eidos special committee on September 24,

- 9 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

2020. After discussion, the Eidos special committee requested that Centerview and Guidehouse conduct additional due diligence regarding certain assumptions and prepare further adjusted projections for each of Eidos and BridgeBio reflecting such assumptions for further discussion with the Eidos special committee.

*Id*. at 74-75.  The Proxy fails to disclose and quantify the adjustments the Special Committee directed Centerview to make to the BridgeBio and Eidos projections on September 24 and September 25, 2020.

26.     The Proxy also sets forth that in connection with rendering its fairness opinion, Centerview reviewed "certain tax and other cost savings and operating synergies projected by the Eidos special committee to result from the transaction furnished to Centerview by the Eidos special committee for purposes of Centerview's analysis (referred to in this summary of Centerview's opinion as the "synergies")."  *Id*. at 96.  The Proxy fails to disclose the synergies projected by the Special Committee and reviewed by Centerview for purposes of its analyses.

27.     Further, the Proxy fails to disclose all line items underlying the calculation of unlevered free cash flow and EBIT.

28.     The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: "Background of the Mergers," "Certain Unaudited Prospective Financial Information" and "Opinion of the Eidos Special Committee's Financial Advisor."

***Material Omissions Concerning Centerview's Financial Analyses***

29.     The Proxy fails to disclose material information concerning Centerview's financial analyses.

30.     The Proxy describes Centerview's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Eidos's public stockholders are unable to fully understand these

- 10 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

31.    With respect to Centerview's *Discounted Cash Flow Analysis* of Eidos, the Proxy fails to disclose: (i) Centerview's basis for assuming that Eidos's after-tax unlevered free cash flows for the terminal year would decline 80% year-over-year in perpetuity; (ii) the individual inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%; (iii) the net present value of federal net operating losses and future losses; and (iv) the number of fully diluted outstanding shares of Eidos common stock as of October 2, 2020.

32.    With respect to Centerview's *Discounted Cash Flow Analysis* of BridgeBio, the Proxy fails to disclose: (i) Centerview's basis for assuming that BridgeBio's after-tax unlevered free cash flows for the terminal year would decline 80% year-over-year in perpetuity; (ii) the individual inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%; (iii) the net present value of federal net operating losses and future losses; and (iv) the number of fully diluted outstanding shares of BridgeBio common stock as of October 2, 2020.

33.    With respect to Centerview's *Analyst Price Target Analysis*, the Proxy fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

34.    With respect to Centerview's *Precedent Premiums Paid Analysis*, the Proxy fails to disclose: (i) the selected transactions reviewed in the analysis; and (ii) the individual premiums paid in each of the selected transactions.

35.    The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Opinion of the Eidos Special Committee's Financial Advisor."

***Material Omissions Concerning Centerview's Potential Conflicts of Interest***

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

36.    The Proxy fails to disclose material information concerning Centerview's potential conflicts of interest.

37.    The Proxy fails to disclose the specific conditions Centerview must satisfy to receive the $2.5 million portion of its compensation and whether Eidos anticipates paying Centerview that $2.5 million.

38.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

39.    The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Opinion of the Eidos Special Committee's Financial Advisor."

***Material Omissions Concerning the Background of the Proposed Transaction***

40.    The Proxy fails to disclose material information concerning the background process leading to the Proposed Transaction.

41.    The Proxy sets forth that after a November 28, 2020 Board meeting, Eidos's legal counsel shared a draft confidentiality agreement with a large international pharmaceutical company identified in the Proxy as "Company C."  The Proxy, however, fails to disclose whether Eidos and Company C executed the confidentiality agreement and, if so, whether the confidentiality agreement includes a "don't-ask, don't-waive" standstill provision that operates to preclude Company C from submitting future proposals for the Company.

42.    Additionally, the Proxy sets forth that:

On November 30, 2020, Company C provided a letter to Eidos (the "November 30 Company C letter"), indicating possible alternative paths and noting that Company C remained interested, on a non-binding basis, in (i) acquiring all of the outstanding shares of Eidos common stock for more than the $120 per share of Eidos common stock indicated in the November 23 Company C letter, contingent upon Company C's ability to engage in discussions with BridgeBio directly to explore its willingness to

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

entertain a transaction at a higher valuation, (ii) acquiring the shares of Eidos common stock held by stockholders other than BridgeBio and its subsidiaries for $110 per share in cash (which proposal was contingent upon Company C receiving the Company C governance rights) and (iii) a potential commercial collaboration between Eidos and Company C, without indicating terms for such a collaboration.

*Id.* at 84.  Following discussions among Company C, Eidos and BridgeBio, BridgeBio determined that none of Company C's proposals were attractive and it was not willing to engage in any transaction proposed by Company C.  Yet, the Proxy fails to disclose the Special Committee's response to BridgeBio's refusal to entertain any of Company C's proposals, especially in light of the fact that Company C's all cash offers were approximately $37 and $47 per share higher than the cash consideration Eidos agreed to with BridgeBio in the Proposed Transaction.

43.    The omission of this material information renders certain portions of the Proxy materially misleading, including, inter alia, the following section of the Proxy: "Background of the Mergers."

44.    Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

45.    Plaintiff repeats all previous allegations as if set forth in full.

46.    During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared,

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Eidos and BridgeBio management's financial projections, the financial analyses that support the fairness opinion provided by the Special Committee's financial advisor, Centerview, Centerview's potential conflicts of interest, and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

48.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

49.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50.     Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

51.     Plaintiff repeats all previous allegations as if set forth in full.

52.     The Individual Defendants acted as controlling persons of Eidos within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Eidos, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

55.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

56.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Eidos's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Eidos, and against defendants, as follows:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 11, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd., #725 E.
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:  310/209-2348
    -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS